UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                v.                           07 Cr. 329 (SHS)

ELVIS FUENTES,
                      Defendant.
-----------------------------------------------------------x

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF AN ORDER TO SUPPRESS PHYSICAL EVIDENCE

                                  JONATHAN MARKS (JM-9696)
                                  Counsel for Defendant
                                  220 Fifth Avenue, Suite 300
                                  New York, NY 10001
                                  Tel: (212) 545-8008

Jonathan Marks
Nelson Farber,
       Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                         07 Cr. 329 (SHS)

      -against-


ELVIS FUENTES,

                              Defendant.
------------------------------------------------------------X

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF AN ORDER TO SUPPRESS PHYSICAL EVIDENCE

Defendant Elvis Fuentes submits this Reply Memorandum of Law in further support of his motion to suppress physical evidence seized from his apartment during an unlawful search on March 20, 2007, and in opposition to the "Government's Post-Hearing Memorandum of Law In Opposition To Defendant's Motion To Suppress Evidence" ("Government Memorandum" or "Govt. Memo").

### THE GOVERNMENT MEMORANDUM FAILS TO DEMONSTRATE THAT THE SEARCH OF THE PREMISES WAS CONSENSUAL

The Government does not dispute that the contraband found in enclosed spaces within the apartment must be suppressed absent Fuentes's or Vega's consent to the search. It brief cherry-picks the record in order to demonstrate consent, when in fact there was none.

    A.    <u>FUENTES DID NOT PROVIDE CONSENT</u>

The Government argues that the circumstances demonstrate Fuentes's

1

consent to a full search of his apartment because, it claims: (1) the agents testified that Fuentes had repeatedly consented; (2) the agents made it plain that they were looking for drugs as well as guns and people; and (3) Fuentes never told the agents to stop searching.

Fuentes did not repeatedly consent, as urged in the Government's Memorandum (Gov. Mem. 12-14). Only Ricigliano's testimony of events should be credited, as urged in Fuentes's main brief (Def. Memo 17-19). As Ricigliano testified, they searched the apartment, opening drawers, because "when I initially asked if we could look around. . .I believed that. . .constituted consent (Tr. 13). Ricigliano did not claim, as Tait did, that Fuentes later told Ricigliano that "you can look wherever you want" (Tr. 42). Crotty's testimony that Fuentes volunteered that he had told the "other guys" that they could look around for drugs or guns (Tr. 61) is unsupported by the testimony of other agents and is inherently implausible and suspect.

While there was uncontroverted testimony that Fuentes consented to a search of his car, Ricigliano conceded that the word "search" was used only in connection with the car, not the apartment (Tr. 11-12, 21-22). On the basis of the credible testimony, the only time Fuentes consented to any kind of an examination of the apartment was when Ricigliano and Tait first walked in.

Nor should the Court accept the Government's argument that Fuentes should be deemed to have consented to a search because Ricigliano asked Fuentes if there were "guns or drugs" in the apartment before asking to have a "look around." The agents were perfectly capable of asking Fuentes point-blank for permission to search the apartment or to have a look around for drugs, but they did not. Ricigliano asked about drugs simply "because a lot of people actually will tell you if they have drugs," and he

2

hoped that Fuentes would, not to alert Fuentes that they wanted to conduct more than a cursory security sweep (Tr. 21). The Government's position that the question about "guns or drugs" can be bootstrapped to the separate request to "have a look around" is an attempt to imply consent through linguistic slight-of-hand.

*United States v. Padilla*, 986 F.Supp. 163, 169 (S.D.N.Y. 1997) (Govt. Memo 13), curiously cited by the Government, actually bolsters Fuentes's argument. The defendant in that case told the agents that they could "look anywhere, you will see, there is no drugs, there is no guns." Fuentes, by contrast, never said anything of the sort, despite the Government's attempt to put such words in his mouth.[1]

The Court should also reject the claim that Fuentes tacitly consented to the search of the bedroom because he did not object to it while it was in progress. Plainly, Fuentes could not consent to a search that he did not know about. In this light, the Government disregards evidence that Fuentes was in handcuffs in the living room area, according to Tait, or in the kitchen, according to Crotty, while the agents were searching the back bedroom at the other end of the apartment (Tr. 14, 39, 60). There was a small hallway connected to the living room and another short hallway which Tait did not find out until later led to a bathroom and the back bedroom, where the search was conducted

---

[1] The government's citation to various factors relevant to establishing consent actually bolsters Fuentes's argument. Quoting *United States v. Lavan*, 10 F.Supp. 2d 377, 384 (S.D.N.Y. 1998), the Government lists as pertinent "whether the defendant was in custody and in handcuffs, whether there was a show of force, whether the agents told the defendant that a search warrant would be obtained, whether the defendant had knowledge of the right to refuse consent, and whether the defendant previously had refused consent[.]" The agents did not start conducting their search until they claim to have found the marijuana in plain view and Racigliano told Fuentes that he was under arrest and put him in handcuffs. There was a substantial show of course, with about eight agents in the small apartment. Moreover, there is nothing in the record establishing that he Fuentes was told that he could the agents' request.

3

(Tr. 39). Thus, there is nothing in the record establishing that Fuentes knew that the bedroom was being searched.[2]

Finally, the Government simply ignores the cases cited at pp. 29-30 of Fuentes's moving memorandum, particularly, *United States v. Gandia*, 424 F.3d 255 (2d Cir. 2005), warning of the dangers to Fourth Amendment interests entailed in the government's circumventing the warrant requirement by using consent entries as a pretext to conduct protective sweeps. The concern raised in this case is actually much greater than that posed in *Gandia*, insofar as: (1) the agents always ask residents if drugs are present in the dwelling as a matter of policy, even without particularized suspicion, and (2) the search that the agents then carry out is far more intrusive than a protective sweep. The Government fails to rebut Fuentes's argument that given the primacy of the privacy issues at stake in such searches, it is objectively unreasonable to find consent unless clearly and unambiguously stated. The putative consent in this case involving authority to "have a look around" falls far below the standard required by the Fourth Amendment to search the concealed areas of the private dwelling.

B. <u>VEGA DID NOT GIVE PRIOR CONSENT</u>

The Government urges the court to credit Crotty's testimony that Vega consented before the search and to reject Vega's unambiguous testimony to the

---

[2] The Government cites *United States v. Carreno-Arias*, 2002 WL 3189049 (S.D.N.Y. Dec. 27, 2002) and *United States v. Lee*, 1996 WL 391877, *3-4 (S.D.N.Y. July 12, 1996) (each cited in Govt. Memo at 14) for the proposition that consent need not be explicit, but rather can be implied from conduct. Yet, there is not even a remote factual similarity between these cases and Fuentes's. In *Carreno-Arias*, the defendant opened his hotel door after agents asked if they could "look around." In *Lee*, consent to search a shopping bag was found when the defendant handed defendants the bag rather than giving verbal assent to open it.

4

contrary. The prosecution's position is unsupported by the record. Had Vega given consent before the search was conducted, Ricigliano and Tait would have said so. Neither did. Ricgiliano relied solely on the initial exchange with Fuentes to justify the search.

Crotty's version is also belied by his own report. He testified that after Vega gave him consent to search, he went into the bedroom and deputies showed him ammunition they had found in one of the dresser drawers (Tr. 62). In his report, (Gov. Ex. 3502-C), Crotty wrote that the ammunition was discovered before he arrived, that Vega gave consent and "during that time," the guns were found. However, he testified that Vega consented *before* the search was conducted (Tr. 62).

AS discussed above, Crotty's claim that Vega gave consent before the guns were found is unsupported by Ricigliano or Tait. It is also unsupported by the unnamed white-haired deputy, whom the Government chose not to call. Moreover, it contradicts Vega's highly credible testimony. She exhibited no confusion in her recollection, as the Government suggests (Gov. Br. n. 4), testifying that without doubt the white-haired deputy told her that they had found guns and marijuana before she consented to a search (Tr. 88, 93-94).

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress should be granted in its entirety.

Dated: New York, New York
July 3, 2007

_____
JONATHAN MARKS (JM-9696)
Attorney for Defendant
220 Fifth Avenue, Suite 300
New York, New York 10001
(212) 545-8008

Jonathan Marks
Nelson Farber,
       Of Counsel